ESTHER JAMES, Plaintiff, *v.* ADAM C. POWELL, JR., Defendant.

Supreme Court, Trial Term, New York County, November 4, 1966.

*Raymond Rubin* for plaintiff. *Henry R. Williams, Lawrence R. Bailey, Thomas V. Sinclair, Jr., William C. Chance, Jr.,* and *Lucille E. Chance* for defendant.

MATTHEW M. LEVY, J. All right, sirs, I am prepared to render my decision.

I do not deem it a difficult matter in the least to determine the effect of the decision and opinion of the Appellate Division (26 A D 2d 295). In my view, each of you gentlemen has sought to superimpose upon that decision and opinion a strained, unreasonable and illogical construction, as will appear as I proceed with my ruling. It is, however, not an easy task to arrive at a conclusion as to the punishment for criminal contempt of court to be meted out to a minister, a Congressman, a leader of men, a man, indeed, of many natural gifts, and he should be a man in relationship to the law that one would look up to, to respect. All of you may rest assured that what I have determined upon is a conclusion that has not been lightly reached.

I am regretful that the defendant, either himself or through his counsel, is unwilling to express any views in that regard, because that expression might be helpful to me, but silence at this time, self-imposed by the defendant once again, and his nonparticipation, may be, and must be, ignored, since I shall make my decision presently.

Under the provisions of section 750 (subd. A, par. 3) of the Judiciary Law, this court has the power to punish for a criminal contempt a person guilty of willful disobedience to its lawful mandate. The only matter before me is the question of the adjudication of the defendant's criminal contempt of court, and the punishment therefor.

I have held in my decision, dated October 27, 1966 (52 Misc 2d 1048), that, under the law of the case, as heretofore established, this court has jurisdiction over the person of the defendant and over the subject matter of this proceeding.

The jury has found, with ample justification on the evidence, that the defendant has willfully disobeyed five individual mandates of the court by not appearing for examination on the following days: 1, September 20, 1963, pursuant to subpœna; 2, May 1, 1964, pursuant to order of the court; 3, November 27, 1964, pursuant to subpœna; 4, November 24, 1965, pursuant to order; and, 5, December 16, 1965, pursuant to subpœna.

After the trial before me, and by decision of October 25, 1966, the Appellate Division (26 A D 2d 295, 296) has held in a related case that: " Failure to obey a *subpœna* in civil proceedings is therefore a civil but not a criminal contempt." (Italics added.)

The Appellate Division made no ruling whatsoever in respect of the willful disobedience of an order as distinguished from a subpœna.

I have indicated to you, during the argument, that the decision of the Appellate Division, under our established law, is binding upon me as authoritative precedent, and I hold that it supersedes so much of the law of the case made at Special Term of this court, and heretofore referred to, as is contrary to that appellate decision.

As a consequence, the defendant is not adjudicated in criminal contempt, and the proceeding is dismissed, in respect of the following: Disobedience number one, the date being September 20, 1963; disobedience number three, the date being November 27, 1964; and disobedience number five, the date being December 16, 1965.

It is to be noted that the order of Special Term, dated September 14, 1966, which referred the issue for trial, in effect, to court and jury — and it fell to my lot to try the case in regular order — I say that that order, which established the law of the case, so far as I was concerned, not only directed " a trial by jury of the issue of the wilfulness as determinant of the guilt of the defendant Adam Clayton Powell, Jr., of criminal contempt in failing to appear pursuant to the "mandates referred to on the dates specified, but, also, " ordered that the plaintiff's motion to adjudge the defendant in civil contempt be denied."

In view of the subsequent decision of the Appellate Division that a debtor who disobeys a subpœna is guilty of civil, though not of criminal, contempt of court, the dismissal of the proceedings, which I have just announced, insofar as they involve disobediences numbers 1, 3 and 5, is without prejudice to such application that the plaintiff may be advised to make, or to such determination that my learned colleague at Special Term may seek to make, with respect to his denial of the motion to adjudge the defendant guilty of civil contempt.

Now, that leaves for consideration by me disobediences numbers 2 and 4 involving, not subpœnas, but orders of the court. I hold that the defendant is guilty of criminal contempt of court in respect of each thereof, and there is adjudication accordingly.

Now, as to punishment. I have culled, from the record of the massive files in this matter, the official comments made by several of my colleagues here and in the Appellate Division on the con-

duct of this defendant. I think it is of moment to note them on the record one by one.

In May of 1964, the court said (43 Misc 2d 314, 320):

"The conduct of defendant in this matter, in my judgment, has been so flagrantly contemptuous of the authority and dignity of this court as to promote the tragic disrespect for the judicial process as a whole. No man should be allowed to continue in this fashion and it is time for defendant to answer for it."

In December of 1965, the court said: "I am a little bit shocked about this situation. I know there were many editorials published in the newspapers about Mr. Powell's monstrous behavior, and this is another example. Frankly, as I said before, if I had occasion to pass upon this, I think a sentence in jail would do more good than the fine, and under the circumstances I have in mind something which may possibly deter him from such behavior in the future.

"It seems to me that the blatant cynicism on the part of Mr. Powell, his disregard for the law, for the ministry and for justice and decency, as far as I can see, is monstrous defiance of everything that is decent in this community, sets a very bad example for the youth of this city and this country. * * * The blatant, cynical disregard for the law on the part of a United States Congressman is detrimental to the law, to the ministry and to democracy.

"This man is supposed to be a member of the Congress, which makes laws, yet he seems to show rank and monstrous defiance to the law. I don't understand it at all."

The Appellate Division, in June of 1966 (26 A D 2d 525) in sustaining a judgment, though in a lesser amount, for the fraudulent transfer of the defendant's real estate in Puerto Rico, said: "that transfer, deliberately made by defendant Adam Powell, a member of Congress, to defeat enforcement of a judgment obtained but two weeks earlier, fully justifies substantial punitive damages against him".

Another colleague, at Special Term, said in August, 1966 (N. Y. L. J., Aug. 1, 1966, p. 8, col. 6):

"Considering the disdainful and demeaning and despising attitude of this judgment debtor toward the authority and dignity of the court, as reflected by the voluminous files of this court which include several civil adjudications of contempt, on a proper and satisfactory jurisdictional basis there is no doubt nor would there be any hesitancy to adjudge the alleged misconduct criminal."

Also at Special Term, in September of 1966, the court said: "I conclude that this misconduct as demonstrated, in charity to

the defendant, may best be characterized as the antics of a mischievous delinquent.

"Because stigmatization and anathematization does [do?] not suffice, in my judgment, it is essential to satisfy the rights and the interests of the public in an appreciation of a fair and equal administration of justice."

In October, 1966, the court said: "The hearing was unique in that it evoked the corporeal presence of the judgment debtor for the first time in the course of the protracted proceedings in both this action and the companion libel litigation. This marked departure from his hitherto elusiveness, was not, unfortunately, accompanied by a similar departure from his policy of ignoring, evading or abusing legal procedures in a campaign of relentless defiance designed to frustrate and impede the judgment creditor in the lawful collection of her judgments. * * * It was merely another ploy in the seemingly endless series of maneuvers and dilatory tactics by which the judgment debtor manifests his distaste and disrespect for our judicial processes."

In October, 1966, another Justice of this court said: "The judgment debtor has again demonstrated his disdain for the processes of the court by his failure to comply with the provisions of the order of October 3, 1966. * * * American justice is dependent on the equal application of the law and its observance by persons in every echelon of our society. The redress of a wrong involves a deliberate pursuit of one's rights. Justice proceeds slowly but surely and will not be denied."

In its most recent decision, the Appellate Division rendered an opinion on October 25, 1966, in which the court said (26 A D 2d 295):

"As the long and ugly record in this matter shows, this failure to obey is consistent with the debtor's cynical refusal to honor his own promises together with a total disregard of any and all process that has been served upon him."

And the court referred to the defendant's conduct as a " sorry spectacle to be terminated by definite action."

Now, gentlemen, I have iterated what seemed to many to be the sad result, and, certainly seems so to me, of a broken phonograph record of plea to and condemnation of the defendant.

The proof is overwhelming that the defendant has flamboyantly flaunted his willful flouting of the lawful mandates of the court to such an extent, indeed, that I was compelled to add to that record, in my recent opinion in this matter, the comment of the " attendant deleterious and corroding impact upon the judicial system as a whole and its serious consequential effect upon the general maintenance of law and order in our community." [52

Misc 2d 1048, 1053.] What the defendant presumes to do with impunity cannot go unpunished. Else the average person may rightly assume that he may do the same, and feel that, when not permitted by the courts thus to act, there is discrimination against the less powerful persons, who rely, and justly rely, upon the courts for the due and impartial administration of justice.

Now, under section 751 of the Judiciary Law: "Punishment for a [criminal] contempt * * * may be by fine, not exceeding [$250], or by imprisonment, not exceeding thirty days, in the jail of the county where the court is sitting, or both, in the discretion of the court."

I do not at all go along with Mr. Rubin's argument that I have the power, in the light of the Appellate Division decision, to sentence the defendant to 150 days in jail on the basis of five disobedience counts here, and of fining him $1,250 on the basis of five times $250. For the three subpœnas are "out", so far as I am concerned.

Were I to ignore the plain reading of the Appellate Division decision, I would be doing violence to the mandate of the law at the same time that I stated that I would not sanction the defendant's conduct in that respect.

And, equally, I want to say to Mr. Williams that, so far as I am concerned, the two orders are " in ".

So, I shall take up the two remaining disobediences.

As to disobedience number 2, the first order, requiring the defendant to appear for examination on May 1, 1964, in proceedings supplementary to judgment and execution, that date was fixed by the court, on consent of the attorneys, at the request of the defendant, and in pursuance of a stipulation personally signed by him. He did not appear for examination on that date, or at any time since, and, to this date, there has been no indication of regret, contrition or repentance.

Accordingly the defendant Adam Clayton Powell, Jr., is adjudicated in criminal contempt for this willful disobedience, and is given the maximum sentence, imprisonment for 30 days, and a fine of $250.

The fourth disobedience, referring to the second order, which required the defendant to appear for examination before trial in the second action, on November 24, 1965, stands, in my view, on a somewhat different footing. In that instance, when the defendant failed to appear and the plaintiff moved to strike the defendant's answer and to punish the defendant for contempt, my learned colleague, at Special Term, granted the motion to strike, but denied the motion to punish. As a result of this

decision, while there has been no punishment in civil contempt, judgment has been obtained by the plaintiff against the defendant for some $100,000 in excess of the first judgment for libel obtained by her against him. In my view, that is a substantial punishment.

Accordingly, while I adjudicate the defendant in criminal contempt for this disobedience and sentence him to 30 days in jail and $250 fine, I direct that the two jail sentences of 30 days each shall be served concurrently, and that the two fines of $250 each be cumulative. Both fines are to be paid to the State of New York.

You gentlemen will kindly settle an order and mandate accordingly and it shall be made returnable after the date of election, within reasonable time from this date, and with a reasonable time to the adversary to read and study and to present a counter order.

Gentlemen, so far as I am concerned, each of you may have an exception to the rulings that I have made.